# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

ARIE REDEKER,

    Plaintiff,

vs.

JAMES COX, et al.,

    Defendants.

2:15-cv-00927-RFB-VCF

**ORDER**

MOTION FOR A CONTINUANCE, CONTEMPT, AND/OR SANCTIONS AND OTHER RELIEF (ECF NO. 44)

    This matter involves *pro se* Plaintiff Arie Redeker's civil rights action against current and former employees of the Nevada Department of Correction ("NDOC"), including James Cox, Dwight Neven, Chilton Leach, Cynthia Sablica, Jacob Murphy, Robert Bannister, and Romeo Aranas ("Defendants").[1] Before the Court is Redeker's Motion for a Continuance, Contempt and/or Sanctions and Other Relief (ECF No. 44); the Defendants' Response (ECF No. 45); and Redeker's Reply (ECF No. 46). For the reasons stated below, Redeker's motion is granted in part and denied in part.

# I. BACKGROUND

    Plaintiff Arie Redeker is currently incarcerated at High Desert State Prison ("HDSP"). Redeker brought civil rights claims under 42 U.S.C. § 1983 for First and Eighth Amendment violations, and a state law claim for negligent supervision, against the Defendants. Redeker's claims arise from the Defendants alleged failure to obtain prompt treatment for his cataracts which caused significant deterioration of his

---

[1] The Court notes that the Attorney General and Deputy Attorney General for the State of Nevada represent the Defendants in this matter. They do not, however, represent co-defendants Linda Adams, Dr. George Leaks, or the NDOC Utilization Review Panel.

eyesight. *See* ECF Nos. 16; 44 at 2. On January 20, 2017, this Court issued a Discovery Plan and Scheduling Order. *See* ECF No. 32. The Court entered an order extending the discovery plan and scheduling order deadlines on April 6, 2017. *See* ECF No. 42.

## II. DISCUSSION

Redeker's Motion requests the following relief from the Court: (1) an extension of discovery and all other deadlines; (2) a hearing to address discovery issues related to medical records and discovery responses; (3) monetary sanctions and a finding of contempt against the Defendants and Defendants' counsel; and (4) an entry of default against co-defendants Linda Adams and George Leaks.

### A. Request to Extend Discovery and Scheduling Order Deadlines

Redeker's Motion requests that this Court extend the deadlines set by the Court's previous discovery plan and scheduling order. *See* ECF Nos. 44 at 6; 46 at 6. The previous discovery plan and scheduling order included the following deadlines:

| | |
|---|---|
| Discovery Completion | September 18, 2017 |
| Deadline to add parties | June 19, 2017 |
| Deadline to amend pleadings | June 19, 2017 |
| Expert disclosures | July 21, 2017 |
| Rebuttal expert disclosures | August 21, 2017 |
| Dispositive motions | October 17, 2017 |
| Joint Pretrial Order | November 17, 2017 |
| Interim Status Report | July 21, 2017 |

*See* ECF No. 42 at 4.

Federal Rule of Civil Procedure 16(b)(4) governs the modification of discovery plans and scheduling orders. Fed. R. Civ. P. 16(b)(4) provides that "[a] schedule may be modified only for good

2

cause and with the judge's consent." The good cause inquiry focuses primarily on the movant's diligence. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000).

Local Rule 26-4 supplements Fed. R. Civ. P. 16 and provides that discovery plans and scheduling orders may be modified for good cause, provided that a motion to extend is made "no later than twenty-one (21) days before the expiration of the subject deadline." *See* LR 26-4; *see also* Local Rule IA 6-1.[2] Additionally, a motion to extend the discovery deadline must include: (1) a statement specifying the discovery completed; (2) a specific description of the discovery that remains to be completed; (3) the reasons why the deadline was not satisfied or the remaining discovery not completed within the time set by the discovery plan; and (4) a proposed schedule for completing all remaining discovery.[3] The Court

---

[2] LR IA 6-1(a) states:

> A motion or stipulation to extend time must state the reasons for the extension requested and must inform the court of all previous extensions of the subject deadline the court granted. (Examples: "This is the first stipulation for extension of time to file motions." "This is the third motion to extend time to take discovery.") A request made after the expiration of the specified period will not be granted unless the movant or attorney demonstrates that the failure to file the motion before the deadline expired was the result of excusable neglect. Immediately below the title of the motion or stipulation there also must be a statement indicating whether it is the first, second, third, etc., requested extension…

[3] LR 26-4 states in its entirety the following:

> A motion or stipulation to extend any date set by the discovery plan, scheduling order, or other order must, in addition to satisfying the requirements of LR IA 6-1, be supported by a showing of good cause for the extension. A motion or stipulation to extend a deadline set forth in a discovery plan must be received by the court no later than 21 days before the expiration of the subject deadline. A request made within 21 days of the subject deadline must be supported by a showing of good cause. A request made after the expiration of the subject deadline will not be granted unless the movant also demonstrates that the failure to act was the result of excusable neglect. A motion or stipulation to extend a discovery deadline or to reopen discovery must include:
>
> (a) A statement specifying the discovery completed;
> (b) A specific description of the discovery that remains to be completed;
> (c) The reasons why the deadline was not satisfied or the remaining discovery was not completed within the time limits set by the discovery plan; and
> (d) A proposed schedule for completing all remaining discovery

has broad discretion in supervising the pretrial phase of litigation. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

The Defendants do not oppose Redeker's request for an extension. *See* ECF No. 45 at 4. Accordingly, the Court grants Redeker's request to extend the discovery plan and scheduling order deadlines. The Court notes that the Defendants "would have stipulated and agreed to an extension of time and filed such stipulation with this Court had Plaintiff requested such." *Id*. In the future, if necessary, Redeker is advised to first coordinate with the Defendants before filing a motion.

The Court will grant a 90-day extension of time for the discovery and dispositive motion deadlines as described below:

| | |
|---|---|
| Discovery Completion | December 29, 2017 |
| Deadline to add parties | September 18, 2017 |
| Deadline to amend pleadings | September 18, 2017 |
| Expert disclosures | October 21, 2017 |
| Rebuttal expert disclosures | November 20, 2017 |
| Dispositive motions | January 17, 2018 |
| Joint Pretrial Order | February 16, 2018 |
| Interim Status Report | October 21, 2017 |

**B. Request for an Evidentiary Hearing on Discovery Issues**

This case is in the discovery phase of litigation. As part of discovery, Redeker is requesting to review his medical records and the Defendants' discovery responses. *See* ECF Nos. 44 at 2; 46 at 2-3. But he alleges that NDOC Administrative Regulations ("AR") are making litigation and discovery "next to impossible" by, among other things, requiring him to "request appointments that … put time limits and other restrictions" on his ability to review discovery. *Id*. According to Redeker, a hearing is necessary to

4

address issues related to incomplete and deficient medical records and discovery responses. *See* ECF Nos. 44 at 3-4.

With respect to medical records, Redeker requests a hearing to determine why some of his medical files were "removed, altered, and edited," and why he is being "denied reasonable access to his medical files." *Id*. For the discovery responses, Redeker requests a hearing to determine why it is taking months to arrange for him to review discovery responses and "who is responsible for the delay." *Id*. The Defendants argue that a hearing is not necessary for two reasons. *See* ECF No. 45 at 2-3. First, the Defendants aver that Redeker has been provided access to review his entire medical file. *Id*. Second, the Defendants assert that Redeker has neither provided specific information on what items are allegedly missing from his medical files, nor the dates he allegedly requested to review records or the actual review dates. *Id*. at 3-4.

Having read and considered the present motion, response, and reply, the Court is not persuaded that a hearing is necessary at this time. Redeker's argues that the provided medical records are incomplete and directs the Court to two NDOC 2569 forms that he found in his medical files on April 24, 2017 and May 11, 2017. *See* ECF Nos. 44 at 3; 46 at 2-3. The NDOC 2569 form Redeker found while reviewing his medical files in April was allegedly entitled "Thinned Documentation" and indicated that "files, notes, charts, and other items" were removed prior to his review. *See* ECF No. 46 at 2-3. The Defendants acknowledge that "HDSP medical records staff" initially "provided Plaintiff with only his most recent medical records to review." *See* ECF No. 45 at 3. After Redeker informed Defendants' Counsel of the incomplete records, Redeker "was promptly scheduled for an appointment to review his entire medical file on May 11, 2017." *Id*. After reviewing his medical records in May, however, Redeker argues that "the file still contained a DOC 2569 form, was not complete." *See* ECF No. 46 at 3. Based on this form,

5

Redeker asserts that "he is being denied access to his files and has no assurances his medical files are complete." *See* ECF No. 46 at 3.

Redeker is not required to submit copies of those forms to this Court, but must at a minimum provide the Court with detail as to which documents are missing and their relevance to his claims. As part of discovery, Redeker is entitled to review his medical files. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim … and proportional to the needs of the case…"). Yet the Court cannot ignore longstanding Supreme Court precedent that prison officials' policies, practices, and regulations be accorded "wide-ranging deference" in their execution. *See Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979). In particular, NDOC AR 639.03(1)-(2) states:

1. Inmates may request to review their medical record under the direct supervision of medical staff members.

2. Prior to the review, all medical and mental-health records will be screened for confidentiality and any items that upon review by the inmate could impact the inmate's mental well being.

    A. All confidential materials and those that may negatively impact the inmate's mental well being will be removed from the medical record prior to review by the inmate.

That some of Redeker's files may have been removed by HDSP medical records staff is not inconsistent with NDOC ARs. Additionally, Defendants' Counsel stated in her Declaration of Counsel that during a teleconference between her and Redeker on May 10, 2017, she "informed [Redeker] of [her] communications with the HDSP medical records staff and that he needed to inform the medical records staff that he required the entire medical file if they did not provide it to him when he reviewed the documents on May 11, 2017." According to Defendants' Counsel, Redeker "reviewed the medical records and discovery responses that were sent to the Warden's office at HDSP" on May 16, 2017 and "did not

indicate any further issues with the review of his medical file." *See* ECF No. 45-1 at 3. Redeker has not asserted that he made a specific request for the allegedly missing files from the HDSP medical records staff and that any such request was denied. Redeker has not asserted whether he attempted to contact Defendants' Counsel to further address these issues.

With respect to the discovery responses, Redeker seeks to amend his complaint to include NDOC Utilization Review Panel ("URP") members who voted against the recommendation of outside specialists regarding treating his cataracts. *See* ECF Nos. 44 at 4; 46 at 4-5. He seeks the URP minutes from their meetings and other documents such as resumes of the voting members to determine liability and suitability as defendants. *Id*. Redeker acknowledges that Defendants have provided him with discovery responses, including URP resumes. *See* ECF No. 46 at 4, 6. Redeker, however, is not pleased with the delay in arranging for him to review the discovery responses, the restrictive conditions in which he is allowed to review discovery responses, and the Defendants' classification of various discovery documents as "not discoverable" or "privileged." *Id*. Redeker states that he contacted Defendants' Counsel to try to informally resolve. *Id*. But he does not indicate the dates of such discussion, what was specifically discussed, or if anything was agreed to or not agreed to and why. *Id*. If Redeker objects to the Defendants withholding or classification of certain documents, the Court notes that he is not prevented from filing a motion to compel discovery in accordance with the FRCP. [4] *See* Fed. R. Civ. P. 37.

---

[4] Federal Rule of Civil Procedure 26(b)(5) provides procedural guidance as to what must be included in a privilege log when a case is in federal court and a party withholds information on the basis that it is privileged or is protected by the work product doctrine. Fed. R. Civ. P. 26(b)(5) requires that a party expressly claim a privilege and describe the nature of the documents, communications or things not produced so as to enable the other parties to assess the applicability of the privilege or protection. The very purpose of a privilege log is to allow a fair way to test a claim of privilege. Generally, the list of items that should be part of a privilege log are identified in *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) and *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989). *But see* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, § 2016.1 at 321-323 (3d ed. 2010) ("The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.") (citing Rule

While the Court understands Redeker's frustrations with the delay in prosecuting his case, a hearing is not necessary at this point. The Court has no basis to doubt that Defendants' Counsel has, in good faith, been, responsive to Redeker. *See, e.g.*, ECF No. 45-1 ("I arranged and participated in teleconferences with … Redeker … to discuss discovery and related matters …on the following dates: February 24, 2017; March 23, 2017; April 4, 2017; April 25, 2017; May 10, 2017; and May 16, 2017."). Defendants' Counsel is advised to make every effort possible to make arrangements for Redeker to review the discovery responses in an appropriate setting for a sufficient time consistent with NDOC policies and procedures. At the April 24, 2017 hearing, the Court explained that Redeker should be able to review documents "with some degree of privacy" within security concerns. *See* ECF No. 43. While Redeker stated at that hearing that he did not consider his cataract dispute or any office traffic an issue, the Court ordered that Redeker be provided a quiet place where somebody can observe what he was doing; but a place where he could actually do his work. *Id.* The Court is confident that Counsel for the Defendants will make every reasonable effort to carry out this Court's order. Although delay is understandable, particularly in this context, should such issues continue unabated into the future, a hearing may be held to consider whether "a system" needs to be "put in place that is responsive, timely, and has accountability." *See* ECF No. 46 at 6.

---

26(b)(5) Advisory committee's Note (1993 Amendments)). General objections do not suffice. *See Apple Inc. v. Samsung Elecs*. Co., 306 F.R.D. 234, 237 (N.D. Cal. 2015), *motion for relief from judgment denied*, No. 11-CV-01846-LHK, 2015 WL 3863249 (N.D. Cal. June 19, 2015). Redeker's motion refers to the Defendants' classification of various discovery documents as "not discoverable" or "privileged." *See* ECF No. 46 at 4. The Defendants have not specifically addressed this objection in their Response. *See generally*, ECF No. 45. To the extent the Defendants and their Counsel are withholding documents on the basis that it is privileged, they are required to provide, among other things, a privilege log so the other party can assess the applicability of the privilege protection. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont*., 408 F.3d 1142, 1148 (9th Cir. 2005) (explaining that a party claiming privilege must "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection."). To the extent the Defendants and their Counsel are not claiming any privilege, the Court requires that the Defendants file a certification with the Court that they are not asserting privilege.

### C. Motion for Contempt and Sanctions

Redeker argues that the Defendants and their Counsel have failed to cooperate in discovery. *See* ECF No. 44 at 5. Redeker asks the Court to hold the Defendants and their Counsel in contempt or issue sanctions for $500. *Id*. The Defendants respond that they have complied with court orders and discovery obligations and that sanctions or contempt proceedings are unwarranted. *See* ECF No. 45 at 5.

#### a. Legal Standards

As a preliminary matter, the Court notes that prisoners' rights are "subject to restrictions and limitations" based on "institutional needs and objectives." *See Bell*, 441 U.S. at 545-46. Among the most important institutional needs and objectives are the "essential goals" of "maintaining institutional security and preserving internal order and discipline." *See id*. at 546; *see also Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 972-74 (9th Cir. 2010). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel." *Id*. at 547. Even "when an institutional restriction infringes a specific constitutional guarantee … the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id*. Given these concerns, the Court accords prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*.

Fed. R. Civ. P. 37 states that if a party fails to obey an order to provide or permit discovery, the court may treat "as contempt of court the failure to obey any order." FED. R. CIV. P. 37(b)(2)(A)(vii). Civil contempt is designed to compel a party's obedience to a specific and definite court order after that party failed to take all reasonable steps to comply. *See GoVideo, Inc. v. Motion Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir. 1993).

A U.S. Magistrate Judge's civil-contempt power is governed by 28 U.S.C. § 636(e). *See Aldridge v. Young*, 782 F. Supp. 1457, 1458 (D. Nev. 1991). It states that where

> the act constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

*See* 28 U.S.C. § 636(e)(6)(B)(iii). The assigned District Judge then hears the evidence to determine whether the conduct warrants punishment. The District Judge may impose contempt sanctions in the same manner and to the same extent as for a contempt committed before the District Judge himself. *See id.*; *see also In re Kitterman*, 696 F. Supp. 1366, 1370 (D. Nev. 1988).

A court has "wide latitude" in determining whether there has been contemptuous defiance of its order. *See Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984). The movant bears the burden of showing by clear and convincing evidence that the respondent violated a specific and definite order of the court. *See Fed. Trade Comm'n v. Enforma Nat. Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004). If the moving party satisfies its burden of production, the burden then shifts to the nonmoving party to demonstrate why compliance could not be achieved. *Id*. While contempt "need not be willful," a party should not be held in contempt if their actions "appear to be based on good faith and a reasonable interpretation of the court's order." *See In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A finding of contempt is not appropriate where the contemnors have taken "all reasonable steps" to comply with the court's order. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1479 (9th Cir. 1992).

Courts have the inherent power to issue sanctions to "protect[ ] the due and orderly administration of justice" and "maintain[ ] the authority and dignity of the court," especially when a party has acted "in

bad faith, vexatiously, wantonly, or for oppressive reasons." *See Cooke v. United States*, 267 U.S. 517, 539 (1925); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975). Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith." *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980). A party demonstrates bad faith (1) where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent" or (2) by "delaying or disrupting the litigation or hampering enforcement of a court order." *See Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978)). The bad faith requirement sets a high threshold. *Id*.

### b. Contempt and Sanctions are not warranted

The Court first addresses Redeker's request for the Court to hold the Defendants and their Counsel in contempt. Redeker argues that "[t]he sole reason continuances are required is the failure of Defendants and their counsel to comply with the Court's orders and the FRCP; and [the NDOC] policies and procedures which frustrate or prevent discovery and the ability to litigate…" *See* ECF Nos. 44 at 5; 46 at 7. Redeker appears to be referring to this Court's order regarding the discovery plan and scheduling order deadlines (ECF No. 42) and the Courts orders from the April 24, 2017 hearing on, *inter alia*, the motion to issue subpoenas. *See* ECF Nos. 44 at 6; 43. Redeker is, in essence, unsatisfied with the Defendant's Counsels alleged inability "to make relevant documents (medical files, discovery responses, etc) available in a timely manner and in a setting that allows an adequate opportunity to review and respond." *See* ECF No. 46 at 7.

The Court understands Redeker's *pro se* status and incarceration, and the frustrations and difficulties that go along with. However, Redeker has not met his burden to show by clear and convincing evidence that the Defendants have violated a specific and definite order of the court in bad faith. In the

11

prisoner's context, discovery deadlines may need to be extended. Safety and security concerns are paramount. *See Bell*, 441 U.S. at 545-46. Having to request a continuance caused by delays in trying to arrange for adequate review of numerous discovery documents, including medical records, in prison does not, without more, constitute a bad faith violation of "a specific and definite order of the court."

Redeker's argument that Defendants have engaged in "a coordinated effort to avoid liability by refusing to make available documents relevant and discoverable" is without merit. *See* ECF No. 46 at 7. Redeker must, at a minimum, articulate specific documents he thinks are missing and their relevance. To be sure, Redeker states that he found an NDOC Form 2569 while reviewing his medical files on April 24, 2017 and May 11, 2017, which indicated "files, notes, charts, and other items" were removed. *Id*. at 2-3. But Redeker's motion does not appear to assert whether he made a specific request for the allegedly missing files from the HDSP medical records staff (and that it was denied) or from Defendants' Counsel. As noted earlier, NDOC AR 639.03(2), which the Court must accord "wide ranging deference," allows screening of an inmate's medical records prior to his review. *See Bell*, 441 U.S. at 547. What is more, the inclusion of the NDOC form in both instances erodes any argument that HDSP medical records staff engaged in a coordinated bad faith effort to frustrate Redeker's prosecution of his case. Redeker's sole basis for his argument that some medical records are missing are those forms. The Court concludes that a finding of contempt is not warranted.

For similar reasons, the Court finds that monetary sanctions are not warranted at this time. The Court has no reasonable basis to conclude that the Defendants and their Counsel engaged in actions that are "tantamount to bad faith." *See Roadway Exp., Inc.*, 447 U.S. at 767. The Court agrees with the Defendants that Redeker's "inability to possess his medical records and/or discovery documents that include his medical information is not to delay or disrupt litigation, but rather due to safety and security concerns." *See* ECF No. 45 at 6. The Defendants and Defendants' Counsel are advised to make every

reasonable effort to arrange for Redeker to review his complete medical record and discovery responses in an appropriate setting with sufficient time, while complying with NDOC's policies and procedures.

**D. Request for Entry of Default Against Linda Adams and Dr. George Leaks**

Redeker asks the Court to enter a default against Defendants Linda Adams and Dr. George Leaks. *See* ECF Nos. 44 at 7; 46 at 8. Redeker previously filed a motion for entry of clerks default as to Adams, Leaks, and the NDOC Utilization Review Panel ("URP") on January 4, 2017. *See* ECF No. 29. The Defendants filed a limited opposition, objecting to entry of a clerks default only with respect to Linda Adams and the NDOC URP; not Leaks. *See* ECF No. 31 at 3. It appears that no ruling has been made on that motion. The Court will address that motion here.

Obtaining a default judgment is a two-step process governed by the Federal Rules of Civil Procedure. *See, e.g.*, *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Baeza v. Assisted Credit Servs., Inc.*, No. 8:15-cv-01451-ODW (JCG), 2016 WL 3912016, at *2 (C.D. Cal. July 19, 2016). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." *See* Fed. R. Civ. P. 55(a). The Defendants assert that Adams and the NDOC URP have not been properly served with a copy of the summons and complaint under Fed. R. Civ. P. 4. *See* ECF Nos. 45 at 7; 31 at 2-3. The Court agrees. Redeker served a copy of the summons and complaint on the Administrative Assistant for the Nevada Office of the Attorney General. *See* ECF Nos. 31 at 2; 29 at Exhibit A. But service on the Nevada Office of the Attorney General does not constitute service upon a particular individual, such as Adams or the individual medical staff members comprising the NDOC URP. *See* Fed. R. Civ. P. 4(e). Accordingly, Redeker is not entitled to default against Adams or the NDOC URP. Redeker's request for entry of clerk's default against Adams and the NDOC URP is denied. Alternatively, Redeker requests that "the AG be required to give the U.S. Marshal's Adams' last known address for

13

service of the summons and complaint." *See* ECF No. 46 at 8. The Court notes that the Defendant's Counsel filed Adams' last known address information under seal on December 20, 2016. *See* ECF No. 27. The Court will direct the U.S. Marshals to serve Defendant Adams at that address.

With respect to Dr. George Leaks, the Court is persuaded that "he was in fact properly served a summons and complaint under FRCP 4." *See* ECF Nos. 44 at 7; 29 at Exhibit A. The Nye County Sheriff's Office served a summons and complaint on Leaks personally on May 8, 2015. *See* ECF No. 29 at Exhibit A. Leaks has failed to timely respond under Fed. R. Civ. P. 12. Therefore, Redeker's request for entry of clerk's default against Leaks is granted.

Second, after the clerk enters default, a party must seek entry of default judgment under Fed. R. Civ. P. 55(b). *See Rubbermaid Commercial Prod., LLC v. Trust Commercial Prod.*, No. 2:13-cv-02144-GMN-GWF, 2014 WL 4987878, at \*3 (D. Nev. Aug. 22, 2014) (discussing the *Eitel* factors courts consider in analyzing a request for entry of default judgment). Redeker's request for a default judgment against Leaks is denied because Redeker has not satisfied the procedural requirements for securing an entry of default judgment against Leaks. *See* Fed. R. Civ. P. 55(a)-(b). In this case, Redeker has not presented any legal analysis under the *Eitel* factors explaining why a default judgment against Leaks should be granted here. *See Haas v. PMCW*, No. 12-CV-570-H (WVG), 2013 WL 12116597, at \*2 (S.D. Cal. July 19, 2013) (denying motion for default judgment where plaintiff failed to provide "any discussion of the Eitel factors showing that Plaintiff is entitled to default judgment, the requested damages, or attorney's fees"). Redeker may file a motion for default judgment that appropriately addresses the *Eitel* factors and Redeker's request for damages.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Plaintiff Arie Redeker's Motion for a Continuance, Contempt and/or Sanctions and Other Relief (EFC No. 44) is GRANTED IN PART and DENIED IN PART. The Court

14

grants the parties a 90-day extension of time for the discovery and dispositive motions deadlines as described above.

IT IS FURTHER ORDERED that Redeker's request for a hearing on discovery issues related to medical records and discovery responses is DENIED.

IT IS FURTHER ORDERED that Redeker's request for monetary sanctions against the Defendants and the Defendants' Counsel is DENIED.

IT IS FURTHER ORDERED that Redeker's request that the Defendants and the Defendants' Counsel be held in contempt is DENIED.

IT IS FURTHER ORDERED that Redeker's request for an entry of default (ECF No. 29) is GRANTED IN PART and DENIED IN PART. The Clerk of the Court is ordered to enter a clerk's default against Defendant Dr. George Leaks. Redeker's request for entry of a clerk's default against Defendants Linda Adams and the NDOC URP is denied.

IT IS FURTHER ORDERED that the Clerk of the Court will make two copies of the amended complaint (ECF No. 16), issue summons to Defendants Linda Adams at the last known address filed under SEAL (ECF No. 27), deliver the same to the U.S. Marshal for service, and send two blank copies of the USM-285 form to Redeker.

IT IS FURTHER ORDERED that Redeker will have 30 days to furnish to the U.S. Marshal the required USM-285 forms. Within 30 days after Redeker receives copies of the completed USM-285 forms from the U.S. Marshal, Redeker must file a notice with the Court stating if Defendants were served. If Redeker wishes to have the U.S. Marshal attempt service again on Defendants, then a motion must be filed with the Court.

IT IS FURTHER ORDERED that the Defendants and the Defendants' Counsel serve Redeker with a privilege log on or before July 21, 2017 to the extent they are withholding documents on the basis that

15

it is privileged. To the extent the Defendants and the Defendants' Counsel are not claiming any privilege, they are required to file a certification to that effect with the Court on or before July 21, 2017.

IT IS SO ORDERED.

### **NOTICE**

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the magistrate judge. Objections must be in writing and filed with the Clerk of the Court within fourteen days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

Pursuant to Local Special Rule 2-2, the Plaintiff must immediately file written notification with the court of any change of address. The notification must include proof of service upon each opposing party of the party's attorney. **Failure to comply with this Rule may result in dismissal of the action**. *See* LSR 2-2.

DATED this 22nd day of June, 2017.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

16